UNITED STATES DISTRICT COURT
DISTRICT OF PUERTO RICO

DAGNES MABEL ECHAVARRÍA-DIAZ,

    Plaintiff,

v.

CUERPO DE BOMBEROS DE PUERTO RICO, COMMONWEALTH OF PUERTO RICO, RUBEN CRUZ, DR. ARNALDO RODRIGUEZ, JOEL FIGUEROA,

    Defendants.

Civil No. 12-1535 (JAF)

**OPINION AND ORDER**

Plaintiff Dagnes Mabel Echavarría-Díaz ("Echavarría") is suing her former employer, Defendant Cuerpo de Bomberos de Puerto Rico ("Bomberos" or "Firefighters"), the Commonwealth of Puerto Rico ("Commonwealth"), senior ranking officer Rubén Cruz ("Cruz"), senior ranking officer Dr. Arnaldo Rodríguez ("Rodríguez"), and senior ranking officer Joel Figueroa ("Figueroa"), as well as other defendants who have since been voluntarily dismissed (collectively "Defendants"). Her suit is for employment discrimination brought under Section One of the Fourteenth Amendment to the United States Constitution; Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981A (hereinafter referred to as "Title VII"); and local Puerto Rican laws. (Docket No. 1.) Defendants filed a motion for summary judgment. (Docket No. 50.) Upon examination of the record, we deny the motion for summary judgment.

## I.

## **Procedural History**

On July 2, 2012, Echavarría filed a complaint against all Defendants. (Docket No. 1.) On December 12, 2012, Echavarría filed notice that she was voluntarily dismissing certain claims, and we granted the voluntary dismissal. (Docket Nos. 20, 21.) We dismissed the entire complaint, but later reopened the case. (Docket Nos. 33-37.) On June 28, 2013, we granted Echavarría's voluntary dismissal of claims against some of the original defendants. (Docket No. 41.) On December 16, 2013, Defendants filed a motion for summary judgment and a statement of uncontested material facts. (Docket Nos. 50, 52.) Echavarría filed a response in opposition to the motion and a statement of contested material facts on January 30, 2014. (Docket Nos. 63, 64.) On February 25, 2014, Defendants filed a reply. (Docket No. 75.)

## II.

## **Facts**

When considering a summary judgment motion, we must view all facts in the light most favorable to the non-moving party. Therefore, to the extent that any facts are disputed, the facts set forth below represent Echavarría's version of the events at issue. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, where Echavarría's asserted facts do not properly comply with Local Rule 56(c) and (e), we deem Defendants' properly-supported statements as admitted. See Cosme-Rosado v. Serrano-Rodriguez, 360 F.3d 42, 45 (1st Cir. 2004) (affirming district court's decision to deem moving party's statements of facts admitted if opposing party fails to controvert properly). It

is worth noting that Echavarría largely admitted the Defendants' Statement of Uncontested Material Facts.  (Docket No. 64.)

Echavarría began working as a wild land firefighter with the Bomberos from February 2010 to June 2012 under a contractual agreement tied to the American Recovery Act program.  (Docket No. 52 at 1-2.)

Echavarría was assigned to the Guánica Station from February 2010 until her transfer in September 2011.  (Docket No. 52 at 2.)  In February or March 2010, Supervisor Gutiérrez called the other firefighters "pussies" when they needed a golf cart to return to the fire station.  He made fun of them because "there is a girl ahead of you." (Docket No. 52 at 23; Docket No. 64 at 18.)  Echavarría complained in February or March 2010 when she was not allowed to refill her water bottle or to share water with anyone else during training.  (Docket No. 52 at 23-24.)  After suppressing a fire, Marvin Figueroa would not allow Echavarría in the front seat of the firefighter van until after Echavarría complained to Gutiérrez.  (Docket No. 52 at 24.)

On April 26, 2010, the firefighters told Echavarría that there was no room for her when they were driving to the funeral of a fellow firefighter's family member.  She was the only firefighter they left behind.  (Docket No. 52 at 25; Docket No. 64 at 19.)  She called Supervisor Gutiérrez but he ignored her call.  She then contacted Sergeant Sepúlveda, but said that she did not want to file a formal complaint.  (Docket No. 52 at 25.)

On July 2, 2010, Gutiérrez asked Echavarría to prepare a Power Point presentation about the accomplishments of the wild land firefighter program.  Echavarría worked all night and into the morning.  Gutiérrez gave credit to all the firefighters, although only Echavarría prepared the presentation.   She asked if she could take a few hours to rest in her dorm the

next day, but her request was denied. (Docket No. 64 at 23.)  She was not given compensatory time for her extra hours, although male firefighters were given compensatory time in analogous situations. (Docket No. 52 at 29; Docket No. 64 at 23.)

On July 13, 2010, Echavarría attended chainsaw training. She was the only crew member who was not allowed to fell a tree. (Docket No 52 at 28; Docket No. 64 at 21.)

On July 22, 2010, the Guánica crew finished training at the Yauco River. (Docket No. 52 at 25.) It began pouring rain with thunder and lightning, and Echavarría's assigned Guánica crew told her that there was no room for her to return to the station. (Docket No. 64 at 19.) She received a ride back from the Juana Díaz crew, and while she was unloading equipment and gear from the van, Iden Rodríguez ("Rodríguez") pointed the water hose at her face and hosed her. (Docket No. 52 at 26; Docket No. 64 at 19-20.) She screamed at him that he was insolent, after which they were both admonished. She requested a meeting with Supervisor Gutiérrez and Rodríguez because Rodríguez "constantly bullied her; he constantly charged at her; he constantly harassed her; nobody stopped him; and he charged at her every day." (Docket No. 64 at 20.) Another time, Echavarría was left behind at the station because she was using the bathroom. (Docket No. 52 at 26.)

Echavarría already had a driver's license which was operator 3 category 8, and she had passed the engineer operator test. Still, Gutiérrez told her that she needed to be evaluated by Rodríguez before she would be allowed to perform as an engine operator. (Docket No. 52 at 27; Docket No. 64 at 21.)

Echavarría complained about a broken light fixture in the women's bathroom on the first floor. Firefighter Danny Rivera told her that if she wanted it fixed, she would need to do it herself. (Docket No. 64 at 16.) There was also a women's bathroom on the second floor,

but there were unknown people walking inside it, and it was "full of sordid feces, in the sink and toilet." (Docket No. 52 at 21.)  The women's bathroom was constantly flooded with sewage.  Sergeant Ferrer told her to clean that sewage, and no other firefighters helped her. (Docket No. 64 at 21.)  Male firefighter Rodríguez took Echavarría's detergent from inside the women's bathroom.  (Docket No. 52 at 21.)  In June, July, or August of 2010, after Echavarría had found feces in the women's bathroom, Sáez told her that she needed to understand her male comrades who were not accustomed to having a woman working in the firehouse.  (Docket No. 52 at 25; Docket No. 64 at 19.)  A meeting was held, where Sergeant Sáez ordered the male firefighters to stop entering the women's dormitory.  (Docket No. 52 at 25.)  New locks were bought.  (Docket No. 52 at 31.)  Echavarría was reprimanded for hanging her underwear on the windows.  (Docket No. 52 at 21.)  However, the male firefighters also hung their clothing to dry on the balcony rail.  (Docket No. 52 at 21.)

Male firefighters used the rear back of the engine to change into their bathing suits and walked with their underwear in their hands to the beach.  (Docket No. 52 at 5; Docket No. 64 at 5.) (before August 8, 2010).  Echavarría told her coworkers that that was "disrespectful and uncalled for." (Docket No. 64 at 5.)

Once, in the common area, firefighter Plaza showed Echavarría an image on his cellular phone of a woman exposing her breast.  She told him that it was disrespectful and unwelcome and she also complained to her supervisor, Gutiérrez.  (Docket No. 64 at 5-6.)  Another time, in August 2010, firefighter Santiago was on his laptop at the squad desk at the Guánica Fire Station.  Echavarría saw that the laptop displayed an image of a woman exposing her breast.  Again, Echavarría complained to supervisor Gutiérrez.  (Docket No. 52

at 6; Docket No. 64 at 6.)  She also reported the incident to the Bomberos Internal Affairs investigator, Maribel Ríos.  (Docket No. 64 at 6.)

While driving to fire incidents in the wild land firefighters' van and sitting in the front passenger seat, male firefighters were continuously touching Echavarría's back and shoulders and pulling her hair.  She constantly asked them to stop, but they did not.  (Docket No. 52 at 7.)  The touching happened every time they went on a fire exit or for training.  (Docket No. 52 at 7.)  Echavarría testified that the firefighters who pulled her hair and grabbed her clothes could have been Rubén Cruz, Arnaldo Rodríguez, or Marvin Figueroa, since they were sitting behind her.  Firefighter Jaime Acosta would often use his pinky nail and run it through her back, pull her hair, and grab her clothes.  (Docket No. 64 at 7-8.)

One time, firefighter Plaza approached Echavarría like he was going to kiss her and put his hand on her shoulder.  She told him that in order to speak with her, he did not need to invade her private space or to touch her.  (Docket No. 64 at 8.)  Echavarría verbally complained to Gutiérrez about this incident.  (Docket No. 52 at 9.)

On August 8, 2010, after unsuccessful verbal complaints, Echavarría gave Gutiérrez a written notice of the incidents; about her unfulfilled requests for a meeting with her alleged harassers; and about her repeated requests to stop the unwelcome behavior.  (Docket No. 64 at 4-5.)  Gutiérrez referred to these comments as "childish" and referred to her as a "girl."  (Docket No. 64 at 5.)  The letter giving written notice, as well as other documents and a notebook where she recorded all the incidents, were all stolen and/or disappeared.  (Docket No. 64 at 5.)

Around September 21, 2010, firefighter Caraballo told Echavarría that she was bipolar.  (Docket No. 52 at 23.)  She complained verbally to Gutiérrez about the comment.

(Docket No. 52 at 23, 32.) Firefighter Rubén Cruz called Echavarría "boca chula" (adorable or cute mouth), "cry baby," and said that "she could not handle pressure." (Docket No. 52 at 23.) Cruz made these comments every time they went out on assignment. (Docket No. 64 at 18.) Firefighter Arnaldo Rodríguez called Echavarría "pendeja" ("asshole"). (Docket No. 52 at 23.)

On November 30, 2010, during an assigned field job, firefighter Arnaldo Rodríguez urinated on the front right side tire while Echavarría was standing there. (Docket No. 52 at 9.) Echavarría reported this to Gutiérrez. (Docket No. 52 at 10.)

Another time, Echavarría was helping firefighter José Pacheco with an errand on the engine truck's equipment. She asked Pacheco for the engine inventory book. In the glass cabinet file, she saw a reflection of Pacheco grabbing his private parts while he made a forward move (the court assumes it was a thrust). She told him that action was disrespectful. (Docket No. 52 at 10-11.) Echavarría verbally complained to Gutiérrez about this. (Docket No. 52 at 11.) Pacheco apologized, but continued to do this thrusting movement whenever they worked together. (Docket No. 64 at 9.)

On January 29, 2011, Iden Rodríguez was operating the fire engine and Echavarría was sitting in the middle front seat. Rodríguez operated the engine with one hand so that he could put the other one positioned right behind her back, and he kept rubbing and tapping her back shoulder. He would not move his arm away when Echavarría requested that he do so. (Docket No. 52 at 12; Docket No. 64 at 11.) Echavarría verbally complained about the incident to Gutiérrez. (Docket No. 52 at 13.)

On April 11, 2011, while travelling to Salinas for a fire incident, firefighter Kenneth González was making jokes and comments over an image in a phone, which showed the

underwear that Echavarría was using that day. He talked about her wearing "pantaletas de viejas" ("granny panties") and said that "it can be fixed by changing into small panties." On the arrival at the Salinas Firehouse, firefighter Charlie Rivera joined them. González showed the content of the phone to Rivera, and both engaged in insulting, sarcastic comments while laughing. (Docket No. 52 at 12; Docket No. 64 at 10.) Echavarría called Gutiérrez a few times to express her anguish about the incident. (Docket No. 64 at 11.)

The male firefighters would stand and watch Echavarría while she did her required exercises, rather than doing the exercises themselves. (Docket No. 52 at 18; Docket No. 64 at 14.) This occurred between ten and fifteen times. (Docket No. 52 at 18.) Echavarría complained about this verbally to Sergeant Sáez once, and to Supervisor Gutiérrez on other occasions. (Docket No. 52 at 18-19.)

On April 16, 2011, Echavarría returned from two days off work to find that the women's bathroom had feces and a foul smell. She asked for the visitor's logbook to see if anyone had used the bathroom. Jamie Acosta told her to look for it in the squad desk. When she opened the desk, she found two magazines – EXTREMO and MAXIM – which showed images of women exposing vaginas and breasts and posing in a sexual and erotic manner. (Docket No 52 at 13-14; Docket No. 64 at 12.)   Echavarría called Gutiérrez to complain, but he did not answer. (Docket No. 52 at 14.) She complained about the incident to Sáez and he gave her the rest of the day off. (Docket No. 52 at 14.)

The Bomberos investigated the matter. (Docket No. 52 at 15.) Echavarría was summoned to Firefighters headquarters on April 25, 2011, on account of the magazine incident. A meeting was held with Commander Caminero, Sergeant Luis Sáez, Sergeant Joel

Figueroa, and Supervisor Gabriel Gutiérrez. Sergeant Joel Figueroa took the minutes of that meeting and drafted a report for Auxiliary Chief Pedro Vázquez. (Docket No. 52 at 16.)

Echavarría was told that there was a zero tolerance meeting regarding pornography, but she was not invited to it. (Docket No. 52 at 113; Docket No. 64 at 14.) A zero tolerance memorandum regarding pornographic and/or offensive material was posted on the Station's bulletin board, but firefighter José Santiago covered it with a menu. (Docket No. 52 at 17, 19; Docket No. 64 at 14, 16.) Echavarría was admonished that the clothing she wore for exercising – calf-length lycra pants with 12% spandex, also worn by her colleague Montero – were inappropriate. (Docket No. 52 at 18; Docket No. 64 at 14.) Gutiérrez also told Echavarría that she needed to remain in her long-neck, long-sleeved NOMEX after completing fire suppressions, despite allowing the male firefighters to rest in their wildland t-shirts. (Docket No. 52 at 11; Docket No. 64 at 10.)

Starting after the April 25, 2011, meeting, Firefighter Josué Mercado "made it his business to be howling like a horny cat all day around the station and that it was non-stop behavior; that he would do this every time he was working a shift; that he would sing the song 'Rabiosa' (Rabid or Mad); and that firefighters would make comments to the effect that they had suppressed fires of cars like hers." (Docket No. 52 at 30; Docket No. 64 at 15.) Echavarría complained about this to Supervisor Gutiérrez. (Docket No. 52 at 19.) After the magazine incident, firefighter Alexis Pacheco told Echavarría: "Don't complaint (sic) because it will be all of us against you." (Docket No. 52 at 22.) After the April 25 meeting, firefighter Rodríguez told Echavarría: "You take Ritalin, with so much education and she doesn't know how to talk. I would never work with you." (Docket No. 52 at 22.)

Gutiérrez issued an internal memorandum on April 26, 2011, about "Claims from Guanica Station Firefighters Related to Situations with Wildland Firefighter Ms. Dagnes Echavarría." It states that "Firefighter Echavarría has displayed inappropriate conduct since the start of the Wildland Program." (Docket No. 64 at 25; Docket No. 60-4.) Echavarría had not been previously reprimanded about the allegedly inappropriate conduct, and it was only raised after she complained of sexual harassment. (Docket No. 64 at 25.)

Echavarría filed a discrimination complaint on June 28, 2011, before the Antidiscrimination Unit of the Commonwealth Department of Labor (ADU). (Docket No. 52 at 3.) In her charge, she included a retaliatory letter signed by Joel Figueroa and dated April 26, 2011. (Docket No. 52 at 3; Docket No. 64 at 3.) She requested that her allegations be investigated; that the firefighters cease and desist from all the discriminatory acts against her; and that they employ all means and remedial measures under the law. (Docket No. 52 at 3; Docket No. 64 at 3.) Echavarría's complaint identified specific dates, places, and persons involved in the sexual discrimination, harassment, and retaliation. (Docket No. 64 at 3-4.)

On May 22, 2011, Echavarría overheard a telephone conversation between Gutiérrez and Johnny Ruiz. Guitiérrez had called the station and requested to speak to one of his crew. Johnny Ruiz said "I don't see anyone here. I only see Smokey the Bear out there" despite Echavarría's presence. (Docket No. 52 at 28.) Echavarría complained about this to Gutiérrez.

In August 2011, for two consecutive weeks, Sergeant Sáez promoted meal activities. (Docket No. 52 at 28.) Echavarría was never asked to contribute. (Docket No. 64 at 22.) When she complained to Sáez, he told her that "they are not obligated to share with you."

(Docket No. 52 at 28.) During these events, the firefighters would fraternize and drink coffee together; firefighter Galarza would sing "without friends;" and firefighter Nieves would comment "she's gonna get hers." Echavarría was the only firefighter who was excluded from these comradeship events. (Docket No. 64 at 22.)

Echavarría felt intimidated by several comments from the other firefighters. Firefighter Díaz said that he had a gun and a license to carry one. (Docket No. 52 at 29; Docket No. 64 at 23.) Firefighter Galarza would sing "I'm alone." (Docket No. 52 at 30.) Little devil faces were drawn next to Echavarría's entries in the logbook. Id. Firefighter Ruiz took a cup of coffee that Echavarría had rejected and drank from it and immediately spit it. Id. Firefighters drove in a zigzag, challenging themselves to kill a dog, to dismember small lizards, and bet on Rodríguez to kill the most frogs ("sapo concho") in his path. Id. One of Echavarría's coworkers took her cell phone and erased the pictures from it. Id. Echavarría's Blackberry charger was stolen. Id. Echavarría found bottle shards around her car and the tires of her car were flat. Id. Her lunch was filled with water. Id. Her water bottle was filled with seasoning. (Docket No. 52 at 31.) Upon learning that Echavarría's water bottle had been filled with seasoning, Guitiérrez said there would be zero tolerance with pranks. (Docket No. 52 at 33.) The skull of a dead animal was found at the entrance of the fire station and there were rumors of witchcraft. Id. A wooden cross was found buried in a slope of dirt where Echavarría parked her car. Id. She discovered ants in the electromechanical panel of her car. Id. While driving home, she was passed by a motorcycle and followed very closely by a car with high beams. Id.

In September 2011, Echavarría was transferred to the Fish and Wildlife Refuge. She remained there until February 2012. (Docket No. 52 as 2.)

In February 2012, Echavarría was transferred to the Mayagüez station until her contract expired in June 2012. (Docket No. 52 at 3.) When she arrived at the Mayagüez station, no one spoke to her, so her work activities were limited to cleaning toilets in the bathrooms. She was told not to wear her work uniform anymore, and not to go to the second floor where the kitchen, common areas, and offices were located. She was not allowed to work out at the office gym, and she was required to clean the men's bathrooms and green areas. She was not allowed to work as a firefighter. (Docket No. 64 at 2.)

## III.

## Legal Analysis

Defendants are entitled to summary judgment on a claim if they can show that there is no genuine dispute over the material facts underlying the claim. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). We must decide whether a reasonable jury could find for Echavarría in any of her claims when all reasonable inferences from the evidence are drawn in her favor. See Scott v. Harris, 550 U.S. 372, 380 (2007).

**A.  Section One of the Fourteenth Amendment to the United States Constitution**

Echavarría states that Defendants violated "Plaintiff's employment rights protected by Section 1 of the Fourteenth Amendment to the Constitution of the United States of America. (Docket No. 1.) However, Section One of the Fourteenth Amendment to the United States Constitution states that:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

14th Amendment. 28 U.S.C. § 1983 provides a cause of action against any person who, acting under color of state law, violates rights created by the Constitution and the laws of the United States. 28 U.S.C. § 1983. Echavarría has failed to develop this argument or to allege that her employers were acting under color of state law. (See Docket No. 1.) Because she proceeds to trial on her Title VII claim, we dismiss this claim without prejudice.

### B.      Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e

#### 1.      Sexual discrimination, sexual harassment, and a hostile work environment

Under Title VII of the Civil Rights Act of 1964, it is illegal for an employer to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). Sexual harassment is a form of sex discrimination prohibited by Title VII. O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001). Title VII also prohibits "sexual harassment in the form of a hostile or abusive work environment." Rosario v. Dept. of Army, 607 F.3d 241, 246 (1st Cir. 2010); see also Harris v. Forklift Sys., 510 U.S. 17, 21 (1993).

When sexual harassment manifests as a hostile or abusive work environment, the First Circuit has listed several elements a plaintiff must establish in her claim:

> (1) That she (or he) is a member of a protected class; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment was based upon sex; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that sexually objectionable conduct was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and the victim in fact did perceive it to be so; and (6) that some basis for employer liability has been established.

O'Rourke, 235 F.3d at 728.  In making the final determination, factors to be considered include: "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Faragher v. City of Boca Raton, 524 U.S. 775, 787-88 (1998) (internal citation omitted).  The "accumulated effect of incidents of humiliating, offensive comments directed at women and work-sabotaging pranks, taken together, can constitute a hostile work environment." O'Rourke, 235 F.3d at 729.  In fact, "where a plaintiff endures harassing conduct, although not explicitly sexual in nature, which undermines her ability to succeed at her job, those acts should be considered along with overly sexually abusive conduct in assessing a hostile work environment claim" and considered for their "cumulative effect." Id. at 729-30.

### a.  Protected class

Because Echavarría is a female employee, she has proven this element. See 42 U.S.C. § 2000e-2(a)(1) (prohibiting workplace discrimination based upon sex); O'Rourke, 235 F.3d 713.

### b.  Unwelcome sexual harassment

A hostile work environment can be proven by "evidence of sexual remarks, innuendoes, ridicule, and intimidation. O'Rourke, 235 F.3d at 729.  Given the alleged facts, a jury could find that they constituted a hostile work environment.

### c.  The harassment was based upon sex

The court has stated that "harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex." O'Rourke, 235 F.3d at 729 (internal citations omitted).  There are numerous allegations which support this idea, and a

Case 3:12-cv-01535-JAF   Document 76   Filed 04/08/14   Page 15 of 17

Civil No. 12-1535 (JAF)                                                        -15-

reasonable jury could find that the harassment was based upon sex. (Docket No. 52; Docket No. 64.)

### d. The harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive working environment

To determine whether the conditions are "sufficiently egregious," the court must:

> Examine all the attendant circumstances including the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfered with an employee's work performance.

Rosario, 607 F.3d at 247. Given the allegations, a reasonable jury could find that the harassment was sufficiently severe or pervasive so as to alter the conditions of Echavarría's employment and create an abusive working environment.

### e. The sexually objectionable conduct was both objectively and subjectively offensive

To be both objectively and subjectively offensive, the conduct must be such that "a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." Faragher, 524 U.S. at 787. A jury could find that a reasonable person would feel this conduct was hostile or abusive. Further, Echavarría did, in fact, perceive it to be offensive, because she complained repeatedly, both to her fellow firefighters and to her supervisors. When these complaints failed to change the behavior, she filed a complaint with the Antidiscrimination Unit on June 28, 2011. (Docket Nos. 52, 64.)

### f. Basis for employer liability

Employer liability depends first on whether the alleged harassment is caused by a coworker or by a supervisor. If the harassment is caused by a coworker, the employer is liable if it "knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." White v. New Hampshire Dept. of Corrections, 221 F.3d 254, 261 (1st Cir. 2000). Echavarría complained to her supervisors repeatedly. (Docket Nos. 52, 64.) The firefighters investigated the matter and a report was written for the Auxiliary Chief. (Docket No. 52 at 14-16.) Echavarría also filed a claim with the Antidiscrimination Unit. (Docket No. 52 at 3.) Given these facts, a reasonable jury could find that there is a basis for employer liability.

### C. Local Laws

The First Circuit has noted that "the substantive law of Puerto Rico on sexual harassment appears to be aligned with Title VII law; the latter's precedents being used freely to construe the former." Gerald v. University of Puerto Rico, 707 F.3d 7, 29 (1st Cir. 2013.) Act No. 115, Puerto Rico's antidiscrimination statute, is also interpreted in line with the national statute. See Collazo v. Bristol-Myers Squibb Mfg., Inc. 617 F.3d 39, 45 (1st Cir. 2010). Because we find that Echavarría's federal claims regarding sexual harassment survive summary judgment, we find that the state claims likewise survive.

## IV.

## Conclusion

For the foregoing reasons, the Defendants' motion for summary judgment (Docket No. 50) is **DENIED**. A Final Pretrial Conference shall be held **on May 21, 2014, at 1:30 P.M.** The Proposed Pretrial Order shall be filed on **May 16, 2014**. Trial shall be held on **June 2, 2014, at 9:30 A.M**.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, this 8th day of April, 2014.

S/José Antonio Fusté
JOSE ANTONIO FUSTE
U. S. DISTRICT JUDGE
